## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TOMMY W. SENEGAL**                                    **CIVIL ACTION**

**VERSUS**                                              **NO.16-1961**

**RELIANCE STANDARD LIFE**                              **SECTION "S"**
**INSURANCE COMPANY**

### ORDER AND REASONS

IT IS HEREBY ORDERED that Tommy W. Senegal's Motion to Supplement Administrative Record (Doc. #13) is **GRANTED**.

**IT IS FURTHER ORDERED** that Tommy W. Senegal's Motion Strike Portions of the Administrative Record (Doc. #13) is **DENIED**.

**IT IS FURTHER ORDERED** that Reliance Standard Life Insurance Company's Motion for Summary Judgment (Doc. #11) is **DENIED**.

**IT IS FURTHER ORDERED** that Tommy W. Senegal's Motion for Judgment Based on the Administrative Record (Doc. #12) is **DENIED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Plan Administrator for reconsideration within 90 days of Tommy W. Senegal's claim. This case is **STAYED** pending that review. The parties may reinstate this case to the active docket by filing an appropriate motion within 14 days after the plan administrator concludes its review.

### BACKGROUND

This matter is before the court on cross-motions for summary judgment. Defendant, Reliance Standard Life Insurance Company, argues that it is entitled to summary judgment based on the administrative record because its discontinuance of plaintiff's long-term disability payments was made in accordance with the policy language. Plaintiff, Tommy W. Senegal, argues that he

is entitled summary judgment finding that he is awarded to long-term disability payments under the Reliance policy because Reliance's decision to terminate his benefits was arbitrary and capricious.

Senegal was employed by Cequel III, LLC as a field service engineer supervising cable installation.  His job required climbing ladders, crawling in tight spaces, completing paperwork, scheduling jobs, managing employees and lifting up to 85 pounds.  Senegal is insured under Cequel's group long-term disability policy issued by Reliance.  Senegal left Cequel on December 14, 2011, due to disability caused by severe back, knee and neck pain, post-traumatic stress disorder and anxiety.  Reliance approved Senegal's initial disability claim and paid benefits.

On May 15, 2013, an Administrative Law Judge ("ALJ") at the Social Security Administration ("SSA") determined that Senegal was disabled from December 14, 2011, through the date of the decision.  Specifically, the ALJ found that Senegal had severe impairments from disorders of the back, osteoarthriosis and allied disorders, affective disorder and anxiety disorders. After reviewing records from Senegal's treating physician, Dr. R. Dale Bernauer, and social worker, Eddie Windham, LCSW, the ALJ found that Senegal was disabled.  Further, based on the testimony of a vocational expert, the ALJ found that there were no jobs in the national economy that Senegal could perform.

On January 27, 2014, Reliance wrote to Senegal to inform him that his long-term disability benefits would be terminated on March 14, 2014, because he no longer met the policy's definition of "totally disabled."  Reliance explained that, for the first 24 months in which a claimant receives benefits, "totally disabled" means that the claimant cannot perform the material and substantial duties of his regular occupation.  However, after the first 24 months, "totally disabled" means that the claimant cannot perform the material and substantial duties of any occupation.  Reliance stated

that it reviewed Senegal's medical records and determined that he was capable of performing sedentary work.  A vocational expert employed by Reliance determined that based on the medical information and Senegal's training, education and experience he could perform the occupations of protective signal operator, service dispatcher and industrial order clerk.

In the same letter, Reliance also concluded that Senegal was no longer eligible for benefits because of the policy's mental or nervous disorder limitation, which states that:

> Monthly Benefits for Total Disability caused or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period.  The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits. Mental or Nervous Disorders include depressive and anxiety disorders.

The letter noted that Reliance would consider the SSA's determination of benefits, but that such determination was not binding because it may be based on different guidelines that could lead to different conclusions.  Finally, the letter explained Senegal's right to appeal the decision.

On July 18, 2014, Senegal timely appealed the termination of his benefits explaining that two vocational experts advised that he was totally disabled and that there were no jobs for which he would qualify that would allow him to obtain gainful employment.  One of the vocational experts was retained by the SSA, and the other by Senegal.

On August 22, 2014, Reliance wrote to Senegal requesting that he undergo an independent medical examination ("IME").  On January 12, 2015, Senegal wrote to Reliance explaining that under 29 C.F.R. § 2560.503-1,[1] Reliance had until October 16, 2014, at the latest, to render a decision and demanded the immediate payment of benefits.

---

[1]  Pursuant to 29 C.F.R. § 2560.503-1(f)(1), a plan administrator for a disability claim must notify the claimant of the plan's adverse benefit determination within 45 days after the receipt of the claim, but the 45 day limit can be extended for up to 60 days if certain conditions are met.  If a plan administrator fails to

Thereafter, Reliance scheduled the IME, which Senegal attended on February 11, 2015. The IME was performed by Dr. Stuart Begnaud.  Dr. Begnaud determined that Senegal had functional limitations with respect to his knees, but stated that he could not determine whether Senegal had limitations with respect to his back and neck.  Dr. Begnaud recommended a functional capacity evaluation ("FCE") to clarify restrictions.  Senegal responded with a letter from Dr. Bernauer, his treating physician, stating that he was totally disabled and included a copy of the Veteran's Administration's ("VA") November 4, 2015, determination that he was totally disabled due to back pain and PTSD.

On March 30, 2015, Reliance wrote to Senegal requesting that he undergo a FCE.  Senegal refused Reliance's request contending that Reliance had unreasonably delayed in determining his appeal, and that the IME and FCE should have been done before Reliance terminated his benefits.

On April 15, 2015, Reliance wrote to Senegal denying his appeal.

On July 30, 2015, Senegal attended a FCE at Work Recovery Services, LLC, which lasted approximately 4 hours and 45 minutes.  The FCE examiner opinioned that Senegal cannot perform competitive sedentary work.  On December 2, 2015, Senegal provided this opinion to Reliance and requested reconsideration of its denial of his long-term disability benefits.  Reliance responded that it would not consider the FCE report.

On February 8, 2016, Senegal filed this lawsuit against Reliance seeking past and future benefits under the long-term disability policy, plus attorneys' fees and costs.  Senegal argues that he is clearly disabled under the terms of the policy and entitled to benefits.  Senegal claims that Reliance's denial of benefits is not based on substantial evidence and is arbitrary and an abuse of discretion.

---

follow the requirements of 29 C.F.R. § 2560.503-1, the claimant is deemed to have exhausted the administrative remedies and may file a lawsuit. 29 C.F.R. § 2560.503-1(l).

Reliance and Senegal filed cross-motions for summary judgment.  Senegal argues that he is entitled to summary judgment because Dr. Bernauer's records demonstrate that he is totally disabled and precluded from maintaining gainful employment because of debilitating pain in his neck, back and knee, independent of his PTSD.  He claims that the medical records show that the physical limitations amount to a total disability without even considering his mental health issues. Senegal also argues that Reliance did not give proper weight to determinations of the VA and the SSA that he is disabled, or to the opinion of his vocational expert, Glenn Hebert.  Senegal argues that Reliance abused its discretion in failing to consider the FCE, and that Dr. Begnaud did not have all relevant evidence, particularly the SSA and VA determinations, when he performed the IME. Senegal argues that Reliance's vocational consultant's report identifying alternative jobs is deficient because it does not state the wages of those occupation as required by La. Rev. Stat. § 22:990. Further, Senegal argues that his claim cannot be denied simply because he failed to attend the FCE requested by Reliance because the request was made months after Reliance was required by 29 C.F.R. § 2560.503-1 to render a decision on his appeal.  Finally, Senegal argues that Reliance underpaid his benefits for a few months, and that he is entitled to attorneys' fees and costs.

Reliance argues that it is entitled to summary judgment dismissing Senegal's claims because it did not abuse its discretion in finding that Senegal no longer met the policy's definition of totally disabled when it discontinued his long-term disability benefits.  Reliance contends that Senegal failed to prove that his physical ailments alone, without considering his mental health issues, prevented him from engaging in any gainful employment.  Reliance points to medical records that show consistent treatment for mental health issues, but only sporadic treatment for physical ones.  Reliance argues that it considered Dr. Bernauer's records, the VA and SSA decisions, but it is not required to rely on the VA's or the SSA's determination because those

5

decisions are based on different standards and cite Senegal's mental condition as part of the basis for disability determinations. Reliance also argues that Senegal has not proved that he is not capable of performing the sedentary work identified by Reliance's vocational expert.  Further, Reliance argues that Senegal waived his claim related to the alleged underpayment of benefits because he did not raise it in an administrative appeal and did not allege it in the complaint.

Reliance also argues that Senegal's failure to comply with his duties under the policy by refusing to attend the FCE when requested is an independent ground for denial of Senegal's claim. Reliance cites a policy provision that allows it to require the claimant to submit to physical, psychological or psychiatric exams as often as reasonably required while a claim is pending. Reliance claims that this provision applied during Senegal's appeal of the termination of his benefits.

Senegal filed a motion to supplement the administrative record with his December 2, 2015, letter to Reliance and the enclosed FCE report arguing that the FCE is a part of the administrative record because it was provided to Reliance with a request for reconsideration of the denial of his appeal and he gave Reliance ample time to consider it before filing suit.  Senegal also moved to strike Reliance's post-denial IME report from the administrative record arguing that it was procedurally unreasonable because it was requested after he appealed the termination of his benefits and it was performed after the deadline for Reliance to make a decision on his appeal. Reliance argues that it was within its rights under the policy to request the IME while the claim was pending on appeal.  Further, Reliance argues that it had no duty to consider the FCE that was submitted after it rendered its decision on Senegal's appeal.

## LEGAL STANDARDS

### I.      Senegal's Motion to Supplement the Administrative Record

Senegal seeks to supplement the administrative record with his December 2, 2015, letter to Reliance and the enclosed FCE, arguing that it should be part of the administrative record because he presented it to Reliance requesting a reconsideration and gave Reliance a reasonable time to consider it before filing suit.

In Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 300 (5th Cir. 1999), the United States Court of Appeals for the Fifth Circuit held that "the administrative record consists of relevant information made available to the plan administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." In so holding, the court also stated that "[i]f the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record." Id.

On December 2, 2015, Senegal sent the FCE report to Reliance and requested a reconsideration of its denial of Senegal's claim for LTD benefits. The enclosed letter outlined the procedural history of Senegal's claim, pointing out that Reliance did not render a decision on Senegal's claim until well after the deadline imposed by 29 C.F.R. § 2560-1 had passed. It also highlighted that Reliance denied Senegal's appeal based on Dr. Begnaud's IME report, and that Dr. Begnaud had recommended a FCE, which Senegal sought to provide to Reliance for its consideration. Senegal stated that he would give Reliance 45 days to consider the FCE before filing suit, and that he would entertain a request for a 45 day extension.

This correspondence complies with Vega's requirements for the FCE to be made a part of the administrative record. Senegal presented the FCE to Reliance requesting a reconsideration of

the denial, and gave Reliance a reasonable amount of time to consider it before he filed suit. Indeed, Senegal gave Reliance the same amount of time to consider the requested reconsideration as Reliance had under 29 C.F.R. § 2560-1 to consider Senegal's original appeal.  Thus, under Vega, the FCE is deemed part of the administrative record.

## II.      Senegal's Motion to Strike Portions of the Administrative Record (Doc. #13)

Senegal moves the court to strike Dr. Begnaud's report from the administrative record.  He argues that it was unreasonable for Reliance to request an IME after it denied his claim for benefits and while his appeal of that denial was pending.  Senegal argues that this gave Reliance the opportunity to create new evidence on which to base the denial of his appeal, and that he was "sandbagged" because he did not have the opportunity to significantly challenge the IME report.

Reliance points to the policy language requiring a claimant to submit to reasonable medical examinations whenever they are requested.  Reliance maintains that it was clearly within its right to request an IME during Senegal's appeal.

In Killen v. Reliance Standard Life Ins. Co., 776 F.3d 303, 310-11 (5th Cir. 2015), the United States Court of Appeals for the Fifth Circuit recognized that an insurer can request an IME during a claimants appeal and that "ERISA does not guarantee claimants an opportunity to rebut an independent medical examination report generated during an appeal prior to a denial of benefits." (citing Metzger v. UNUM Life Ins. Co. of Am, 476 F.3d 1161, 1167 (10th Cir. 2007) and Shedrick v. Marriott Int'l, Inc., 500 Fed. Appx. 331, 339 (5th Cir. 2012)).  The court found that the claimant was not "sandbagged" when the IME doctor's report bolstered the insurer's original position that the claimant was not disabled. Id. at 311.

Here, the insurance policy provided that Reliance could request an IME "to determine the existence of any Total Disability" which is the basis for a claim[,] "as often as it is reasonably

required while a claim is pending." There is no restriction stating that such an examination cannot be requested while an appeal is pending. Further, Dr. Begnaud's report supported Reliance's original reason for terminating Senegal's benefits, namely that his physical ailments did not meet the policy's definition of Total Disability. It does not provide a new grounds for denial. Thus, under <u>Killen</u>, the IME was not unreasonable and is properly a part of the administrative record. Senegal's motion to strike the IME from the administrative record is DENIED.

### III.    Remand to the Plan Administrator

Remanding this matter to the plan administrator for reconsideration is warranted for multiple reasons. First, this court has determined that the FCE attached to Senegal's December 2, 2015, correspondence is part of the administrative record. The plan administrator should review this evidence that was previously submitted that it had refused to consider. <u>See Jones v. Metro. Life Ins. Co.</u>, 2013 WL 2368328, at *6 (S.D. Tex. May 29, 2013) (citing <u>French v. Dade Behring Life Ins. Plan</u>, 2011 WL 559186, at *4 (M.D. La. Nov. 17, 2011); <u>Hartwell v. U.S. Foodservice, Inc.</u>, 2010 WL 3713496, at *9 (S.D. Miss. Sept. 13, 2010)).

Second, in the April 15, 2015, appeal denial letter, Reliance stated that Senegal's refusal to attend the FCE recommended by Dr. Begnaud constituted an independent ground for terminating his benefits. This ground for termination was not raised in the initial termination letter dated January 27, 2014.   The plan administrator did not substantially comply with ERISA's procedural requirements because Senegal never had the opportunity to contest at the administrative level this new basis for terminating his benefits. <u>Rossi v. Precision Drilling Oilfield Servs. Corp. Emp.</u>, 704 F.3d 362, 367 (5th Cir. 2013). "[W]hen an ERISA defendant puts forth a reason for denying benefits that it failed to assert during the administrative proceedings, the proper remedy is usually to remand the case to the plan administrator for the development of the full factual

record." <u>Dillon v. Aon Corp.</u>, 265 F.3d 1058 (5th Cir. 2001) (citing <u>Schadler v. Anthem Life Ins.</u> <u>Co.</u>, 147 F.3d 388, 398-99 and n. 11 (5th Cir. 1998)).  Senegal did not have the opportunity to refute this ground for denial in the administrative process, and remand to the plan administrator would remedy this issue.

Third, the April 15, 2015, denial letter does not discuss the VA's benefits determination and does not meaningfully discuss the SSA's benefits determination.  As to the SSA determination, the letter says that, if the SSA had the IME and vocational reports obtained by Reliance, it might have reached a different conclusion and that the SSA's decision is based on different guidelines. There is no discussion of the ALJ's findings on Senegal's disability.  The plan administrator should meaningfully address both the VA's and the SSA's opinions.

Finally, Senegal seeks damages for the underpayment of benefits.  He did not raise this claim at the administrative level.  Remand to the plan administrator would give him the opportunity to properly pursue this claim.

Therefore, this matter is REMANDED to the plan administrator for the consideration of the items listed herein within 90 days.  This case is stayed pending that review.  The parties may reinstate this case to the active docket by filing an appropriate motion within 14 days after the plan administrator concludes its review.   The parties' cross-motions for summary judgment are DENIED without prejudiced to being re-urged if the case is reinstated.

## CONCLUSION

**IT IS HEREBY ORDERED** that Tommy W. Senegal's Motion to Supplement Administrative Record (Doc. #13) is **GRANTED**.

**IT IS FURTHER ORDERED** that Tommy W. Senegal's Motion Strike Portions of the Administrative Record (Doc. #13) is **DENIED**.

**IT IS FURTHER ORDERED** that Reliance Standard Life Insurance Company's Motion for Summary Judgment (Doc. #11) is **DENIED**.

**IT IS FURTHER ORDERED** that Tommy W. Senegal's Motion for Judgment Based on the Administrative Record (Doc. #12) is **DENIED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Plan Administrator for reconsideration within 90 days of Tommy W. Senegal's claim. This case is **STAYED** pending that review.  The parties may reinstate this case to the active docket by filing an appropriate motion within 14 days after the plan administrator concludes its review.

New Orleans, Louisiana, this ___17th___ day of January, 2017.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**